# Stroud's Appeal.

A judgment debtor in good faith purchased claims, not in judgment, against his creditor, more than sufficient to pay off the amount of the judgment.  An assignment for the benefit of creditors having been made by the creditor, the debtor obtained a rule to show cause why the judgment should not be opened, in order that he might set off the claims he had acquired, as an equitable defence thereto :

*Held,* that the rule was properly discharged.

March 18th, 1885.  Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, and CLARK, JJ.  PAXSON and GREEN JJ., absent.

[Stroud's Appeal.]

APPEAL from the Court of Common Pleas of *Susquehanna county:* Of January Term 1885, No. 386.

This was an appeal by Billings Stroud from a decree of said court discharging a rule to show cause why a judgment against him should not be opened and defendant let into a defence.

Judgment for $6000 and interest from December 7th, 1881, was entered in favor of A. Lathrop, trustee of the assigned estate of W. H. Cooper, on a judgment note dated December 7th, 1881, due one day after date, given by Billings Stroud to Wm. H. Cooper & Co., assignors of the plaintiff.

The facts as they appeared before the court from depositions read at the hearing of the rule were as follows :—

William H. Cooper was a banker doing business in Montrose for nearly thirty years, under the firm name of W. H. Cooper & Co. He was generally believed to be doing a prosperous business, was considered a man of wealth, and enjoyed an almost unlimited credit. Stroud borrowed money from him, becoming indebted to the extent of $6000. Although the understanding between the parties was that this was to be paid whenever convenient, it was secured by the judgment note already referred to. Upon this judgment was entered May 9th, 1882, and receipts are filed of record for the following payments: December 7th, 1882, $900; October 22nd, 1883, $851.40. On the evening of June 14th, 1884, Wm. H. Cooper was shot in the street, receiving wounds from the effects of which he died on July 3rd, 1884. On June 17th, Cooper's bank was not opened and a notice was posted upon the door stating that it "was closed for the present on account of the dangerous illness of Mr. Cooper." His legal adviser, Hon. W. H. Jessup, and the cashier assured the customers of the bank and the general public that it was perfectly solvent and would be re-opened in a few days fully prepared to meet all demands upon it and that Cooper had made a will directing that in case of his death the bank should be continued by the estate. These statements were made in perfect good faith, and were implicitly relied upon. Stroud, fearing, however, that he might be called upon suddenly to pay this judgment, on June 17th, 1884, purchased various claims for deposits then due, to an amount more than sufficient to pay the judgment, giving therefor his notes on time, but unconditionally and for the full amount. This he did in good faith, believing that he might use these claims as a set-off against the judgment, or else in payment of the same. On the following day (June 18th,) Cooper made an assignment to Hon. W. H. Jessup, who afterwards resigned, A. Lathrop being appointed his successor. It was ascertained that the assets were only about $100,000, while the liabilities amounted to about $400,000

Cooper was therefore insolvent at the time when the defendant purchased the certificates of deposit, but of this fact the latter and the community at large were entirely ignorant. Desiring therefore by an appeal to the equitable powers of the court to set off his claims against the judgment so as to avoid coming in for a *pro rata* dividend under the assignment, the defendant on August 21st, 1884, obtained this rule to show cause why the judgment should not be opened and himself let into an equitable defence.

The court, after hearing, discharged the rule, MORROW, P. J., filing the following opinion :—

A court of equity has the power to set off one judgment against another, where it will infringe on no other right of equal grade. Also to restrain judgments at law, for fraud or acts contrary to equity ; Wistar *v.* McManes (4 P. F. S., 318) ; but I am unable to find a case in Pennsylvania where a judgment has been opened, on the ground of the insolvency of the plaintiff, to let in cross demands purchased by the defendant a long time after the judgment has been entered. It is possible such interference is within the equitable power of the court, but insolvency alone seems to be insufficient where the party has a legal remedy. It was said in Heilman *v.* Union Canal Co. (1 Wright, 100), 'insolvency itself is not a ground of equitable interference. The remedy is what is to be looked at, if it exists, and is ordinarily adequate ; its possible want of success is not a consideration. It is not intended here to say that insolvency is never a consideration moving a chancellor. It frequently does ; but never alone. The equitable remedy must exist independently. In balancing cases it is a consideration that gives preponderance to the remedy. Hence the alleged insolvency of the company, and the supposed inability to collect damages that may be recovered from it is no reason for interfering by injunction.'

"It is claimed that the defendant has not the same legal remedies since the assignment as before. It is enough to say that for his own convenience, he voluntarily made himself a creditor; and has the same remedies against the assignee that other creditors have. They may sue and obtain judgments, but the effect of the judgments and their inability to collect by execution, seems to be 'no reason for interfering by injunction,' nor does it raise equities in his favor because he purchased the debts against Cooper, in good faith, for value, and in the honest and full belief of his solvency. It was without agreement or knowledge on Cooper's part, but was intended by Stroud for his own convenience and advantage. He was, therefore, a volunteer and took the risk. It was a great hardship, but if he were to have the relief he seeks it would

[Stroud's Appeal.]

be at the expense of the other creditors. Their debts are of equal grade and ought not to be impaired, unless an independent equity is shown in the defendant. This we think he has failed to show, and the rule must be discharged."

Defendant thereupon took this appeal assigning for error the entering of this decree, discharging the rule.

*Wm. M. Post* and *Eugene O'Neill*, for appellant.—The voluntary assignee is the mere representative of the assignor, and takes the property subject to all existing liens charges, and set-offs: Wright *et al. v.* Wigton *et al.* 3 Norris, 163; Morris's Appeal, 7 Norris, 368. Although at law a claim not in judgment cannot be set off against a judgment, yet where there is mutual indebtedness and the plaintiff in the judgment is insolvent, equity will interfere to prevent the injustice that would otherwise be done: Holbrook *v.* Receivers of Am. F. Ins. Co., 6 Paige, 227; Rose *v.* Hart, 2 Sm. Leading Cases, 358; Patterson *v.* Patterson, 3 Casey, 40; Guttendag *v.* Lehigh Valley R. Co., 14 Phila., 639; Assignee of Stewart *v.* Nat. Security Bank, 6 Weekly Notes, 399. The assignee cannot complain, as no money was due his assignor at the time of the assignment, and the fact that certain creditors may have received full payment while the others must share a proportionate loss has no bearing on the matter. It has been repeatedly ruled that creditors are not parties to the assignment and have no standing here: Twelves *v.* Williams, 3 Whar., 485; Jefferis's Appeal, 9 Casey, 39; Bruce *et al., v.* Jennings *et al.*, 2 Pearson, 63.

*McCollum, Searle,* and *Smith,* for appellee.

Chief Justice MERCUR delivered the opinion of the court, March 30th, 1885.

The merits of the original judgment cannot be inquired into in a scire facias on that judgment: Pitts. Cin. & St. L. Railway Co. *v.* Marshall, 4 Norris, 187. As a general rule no defence can be made to a scire facias on a judgment except one arising subsequent to the judgment: Seymour *v.* Hubert, 11 Norris, 499. The only defence in the trial of a scire facias on a judgment is a denial of the existence of the judgment or proof of a subsequent satisfaction in law or equity or a discharge thereof: Dowling *v.* McGregor, 10 Id., 410.

When a judgment is opened it is not subject to set-off generally. The defendant may attack the validity of the claim on which the judgment is founded; the good faith of the transaction connected with the consideration; subsequent payment of the debt or equitable discharge therefrom. The

[Wells *v.* Van Dyke.]

defence must be one which must, either at law or in equity, have attached to the judgment or to the consideration on which it rests : Beaty *v.* Bordwell, 10 *Id.*, 438.

The practice of opening judgments to establish a defence which has originated since the rendition of the judgment is improper. Such a defence does not impair the original validity of the judgment. An issue should be formed to try the facts which are alleged to have so attached to the judgment as to constitute a payment or release thereof. It follows there was no error in the court's discharging the rule and in refusing to open the judgment for the reasons shown.

Decree affirmed and appeal dismissed at the costs of the appellant.